UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------X

COCONUT GROVE PADS, INC.,

        Plaintiff,

   -against-

MICH & MICH TGR, INC., MICHELLE
OSTASESKI, and MICHAEL HAYES

        Defendants.
---------------------------------X
---------------------------------X
MICH & MICH TGR, INC. and MICHELLE
OSTASESKI,

        Counterclaim Plaintiffs,

   -against-

COCONUT GROVE PADS, INC.,

        Counterclaim Defendants.
---------------------------------X

**MEMORANDUM & ORDER**
15-CV-2158 (KAM)(GRB)

**MATSUMOTO, United States District Judge:**

     Coconut Grove Pads, Inc. ("CGP") commenced this action principally seeking a declaratory judgment that U.S. Reissue Patent No. 43,766 (the "'766 Patent" or the "patent-in-suit") is invalid and not infringed by CGP. The patent-in-suit is for a bra strap retainer, and CGP named as defendants the owner of the '766 Patent, Mich & Mich TGR Inc.; inventor Michelle Ostaseski; and Mich & Mich principal Michael Hayes (collectively, "Mich & Mich"). Mich & Mich asserted a counterclaim alleging that CGP infringed

the '766 Patent.[1] CGP has moved for partial summary judgment of non-infringement and invalidity. For the reasons provided herein, CGP's motion is GRANTED in part and DENIED in part.

## BACKGROUND

The facts provided below derive from the parties' Local Rule 56.1 statements, as well as from the exhibits attached by the parties to their respective summary judgment filings.[2] The court resolves all ambiguities and draws all reasonable inferences in favor of Mich & Mich. *See Spiegel v. Schulmann*, 604 F.3d 72, 77, 81 (2d Cir. 2010)

This dispute centers on Mich & Mich's patent for a bra strap retainer designed to "prevent[] the [bra] straps from falling from the user's shoulders." '766 Patent col.1 ll.20-21. The device "includes a retaining member having an elongate main portion and

---

[1] In its initial declaratory judgment complaint, CGP named only Mich & Mich TGR Inc. In its operative Second Amended Complaint (ECF No. 56), CCG added claims against Ostaseski and Hayes. The parties also subsequently stipulated to the addition of Ostaseski, though not Hayes, as a counterclaim plaintiff. (ECF No. 98.) Ostaseski was the original owner of the '766 Patent, but assigned her rights to Mich & Mich before this action arose. (ECF No. 76, Ostaseski Decl., at ¶ 2.) After the institution of this action, Mich & Mich assigned the rights to the '766 Patent back to Ostaseski. (ECF No. 98.) Because the parties do not meaningfully distinguish between Mich & Mich, Ostaseski, and Hayes, and in the interest of simplicity, the court refers to Mich & Mich, Ostaseski, and Hayes collectively as "Mich & Mich."

[2] The parties have filed statements of material facts pursuant to Local R. 56.1. (*See* ECF No. 75, CGP's Statement of Undisputed Material Facts ("CGP 56.1"); ECF No. 76, Mich & Mich's Counterstatement of Undisputed Material Facts ("Mich & Mich 56.1").) The parties' exhibits (located at ECF No. 75 (CGP's exhibits) and ECF No. 76 (Mich & Mich's exhibits)) are referenced either as "CGP Ex." or "Mich & Mich Ex."

opposite end portions which are adapted to keep straps of a bra on a user's back in proximate relationship to one another." *Id.* col.1 ll.37-40. The '766 patent describes a device that "essentially pulls the [bra] straps on the user's back together" and provides an "easy and convenient [method] to wind the straps disposed upon the user's back through the bra strap retainer." *Id.* col.3, 2-3, 5-7.

The original application that eventually led to the patent-in-suit was U.S. Patent Application 11/087,929 (the "'929 Application"). The '929 Application resulted in the issuance of U.S. Patent 7,278,900 (the "'900 Patent"). A reissue application, U.S. Patent Application 12/575,600 (the "'600 Reissue Application"), followed to obtain additional claims for the '900 patent.[3] The '600 Reissue Application resulted in the issuance of the '766 Patent, the patent-in-suit in the instant action. The '766 Patent is identical to the '900 Patent, with a single exception. The '766 Patent adds four method claims: claims 12, 13, 14, and 15. Claims 1 through 11 of the '766 Patent are the exact same claims present in the '900 Patent.[4]

---

[3] Where an issued patent is "wholly or partly inoperative or invalid" because of error on the part of the patentee, the patentee may file a reissue application. *See* 35 U.S.C. § 251(a).
[4] The patents discussed in this memorandum and order are annexed to the briefing. (*See* CGP Ex. 1 (the '766 Patent); CGP Ex. 4 (the '900 Patent).)

Mich & Mich contends that CGP — by marketing and selling CGP's *Racer Back Bra Clips* and *The Natural* clips — infringes claims 1, 3, 4, 5, 6, 8, 12, 13, and 14 of the '766 Patent.[5] (ECF No. 52, at ¶ 68; CGP Ex. 7, Amended Disclosure of Asserted Claims and Infringement Contentions with Claim Chart.) Two distinctions are relevant to the analysis that follows. The first is the distinction between "apparatus" claims (sometimes referred to as "device" claims) and "method" claims. An apparatus claim "is directed to a device's structure," Amy L. Landers, *Understanding Patent Law* § 4.04[B] (2012), whereas a "method claim is a series of steps of manipulation, whether the steps would be performed wholly by machine or partly by a person, so long as they are not purely mental steps." *EBS Dealing Res., Inc. v. Intercontinental Exch., Inc.*, 379 F. Supp. 2d 521, 524 n.2 (S.D.N.Y. 2005) (internal quotation marks and citations omitted). Claims 1, 3, 4, 5, 6, and 8 of the '766 Patent are apparatus claims. Claims 12, 13, and 14 of the '766 Patent are method claims.

---

[5] To the extent that Mich & Mich assert that dependent claim 11 is infringed (*see* CCG Ex. 7, at pp. 1, 23; *but see* ECF No. 52, at ¶ 68 (no allegation of infringement of claim 11)), summary judgment of non-infringement would still be appropriate under the court's analysis *infra* because claim 11 is dependent on claim 8, which the court concludes is not infringed. (*See infra*.) Mich & Mich have not alleged that dependent method claim 15 is infringed. (*See* CCG Ex. 7, at p. 23 (no allegation of infringement of claim 15); ECF No. 52, at ¶ 68 (same)).

The second relevant distinction is between independent and dependent claims. Independent claims stand alone and do not reference any other claim, whereas dependent claims reference broader independent or dependent claims and commonly express particular embodiments. *See* 35 U.S.C. § 112. Claims 1, 6, 8, and 12 of the '766 Patent are independent claims, whereas claims 3, 4, 5, 13, and 14 are dependent claims. The court need only construe the independent claims — claims 1, 6, 8, and 12, which contain all of the disputed language — in order to resolve the issues presented in this action. *See Cognex Corp. v. Int'l Trade Comm'n*, 550 F. App'x 876, 881 (Fed. Cir. 2013) ("[A] dependent claim necessarily cannot be infringed if the independent claim is not infringed . . . ." (citation omitted)).

On August 20, 2014, CGP brought an action against Mich & Mich seeking a declaratory judgment of non-infringement and invalidity of the '766 Patent. (ECF No. 1.) CGP twice amended its complaint (ECF Nos. 24, 56), asserting additional counts not relevant here, and Mich & Mich counterclaimed alleging that CGP is infringing the '766 Patent. (ECF No. 52.) CGP has moved for partial summary judgment on the grounds that it does not infringe the '766 patent and that the '766 patent is invalid, and has filed a memorandum in support of its motion. (ECF No. 75, CGP's Memorandum

in Support of Motion for Partial Summary Judgment ("CGP Mem.").)
Mich & Mich filed an opposition memorandum, to which CGP replied.
(ECF No. 76, Mich & Mich's Memorandum in Opposition to CGP's Motion
for Partial Summary Judgment ("Mich & Mich Opp'n"); ECF No. 77,
CGP's Reply in Support of Partial Motion for Summary Judgment ("CGP
Reply").)

## **LEGAL STANDARD**

Summary judgment is appropriate "only where there is no
genuine issue of material fact to be tried, and the facts as to
which there is no such issue warrant the entry of judgment for the
moving party as a matter of law." *Kaytor v. Electric Boat Corp.*,
609 F.3d 537, 545 (2d Cir. 2010). A dispute of material fact is
genuine "if the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for
summary judgment, the court must resolve all ambiguities and draw
all reasonable inferences in favor of the nonmovant. *See Zalaski
v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir.
2010).[6]

---

[6] The Federal Circuit "reviews a district court's decision concerning summary
judgment under the law of the regional circuit." *Convolve, Inc. v. Compaq
Computer Corp.*, 812 F.3d 1313, 1317 (Fed. Cir. 2016). When deciding a summary
judgment motion in a patent action, the district court applies the law of the
circuit in which it sits to non-patent issues, and the law of the Federal

Summary judgment on the issue of infringement is proper only when "no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *Spiel Assocs., Inc. v. Gateway Bookbinding Sys., Ltd.*, No. 03-CV-4696, 2010 WL 546746, at *6 (E.D.N.Y. Feb. 16, 2010) (citing *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005) (citation omitted)).

## DISCUSSION

"A two-step process is used in the analysis of patent infringement: first, the scope of the claims are determined as a matter of law, and second, the properly construed claims are compared to the allegedly infringing device to determine, as a matter of fact, whether all of the limitations of at least one claim are present, either literally or by a substantial equivalent, in the accused device." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002).

The court's analysis proceeds in the following manner. First, the court provides an explanation of relevant claim construction principles. Second, the court addresses claim

---

Circuit to substantive patent law issues. See *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1368 (Fed. Cir. 1999).

construction and infringement regarding independent apparatus claims 1, 6, and 8. Third, the court addresses claim construction and infringement regarding independent method claim 12. Finally, the court addresses the limited invalidity concern that arises as a result of the court's determination that genuine issues of material fact preclude summary judgment of non-infringement on the method claims.

## I. *General Claim Construction Principles*

"[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instrs., Inc.*, 517 U.S. 370, 372 (1996). "Courts are permitted on summary judgment to construe the claims of the patent at issue to determine their meaning and scope, followed by a determination of whether evidence offered raises a triable issue of fact with regard to infringement." *Mich & Mich. TGR, Inc. v. Brazabra, Corp.*, 128 F. Supp. 3d 621, 631–32 (E.D.N.Y. 2015).

"[T]he words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (internal quotation marks and citation omitted). "When construing claims, the claims and the rest of the patent, along with the patent's prosecution history

(together, the intrinsic evidence of the meaning of the claims) are the primary resources." *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1328 (Fed. Cir. 2008).

Courts first "look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention." *Semitool, Inc. v. Dynamic Micro Sys. Semiconductor Equip. GmbH*, 444 F.3d 1337, 1346 (Fed. Cir. 2006) (internal quotation marks and citation omitted). Claim terms "are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (internal quotation marks and citation omitted). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." *Id.* at 1313.

"[S]econd, it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). A patent applicant may imbue terms with a different meaning than they might otherwise have to a person of ordinary skill in the art, but the applicant must set out any "different meaning in the specification in a manner sufficient to give one of ordinary skill in the art notice of the change from ordinary meaning." *Innova/Pure*

*Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004).

Third, courts frequently rely on the prosecution history of the patent, which "may be critical in interpreting disputed claim terms because it contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." *Sunovion Pharm., Inc. v. Teva Pharm. USA, Inc.*, 731 F.3d 1271, 1276 (Fed. Cir. 2013) (internal quotation marks and citation omitted); *see also Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002) ("The prosecution history is often of critical significance in determining the meaning of the claims." (internal quotation marks and citation omitted)). As the Federal Circuit has explained:

> The court has broad power to look as a matter of law to the prosecution history of the patent in order to ascertain the true meaning of language used in the patent claims: The construction of the patent is confirmed by the avowed understanding of the patentee, expressed by him, or on his half, when his application for the original patent was pending. When a patent bears on its face a particular construction, inasmuch as the specification and claim are in the words of the patentee, such a construction may be confirmed by what the patentee said when he was making his application.

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (internal quotation marks, citation, and alterations

omitted); *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." (citations omitted)).[7]

"Finally, although in most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term, a court may consider extrinsic evidence if necessary." *Brazabra, Corp.*, 128 F. Supp. 3d at 633 (citation omitted). "[W]hile helpful, extrinsic sources like dictionaries and expert testimony cannot overcome more persuasive intrinsic evidence." *Finisar*, 523 F.3d at 1328; *see also EBS*, 379 F. Supp. 2d at 524 ("Extrinsic evidence is considered only where the intrinsic evidence does not provide a sufficient description to resolve ambiguities in the scope of the claim." (citation omitted)).

## II. *The Apparatus Claims*

The court first construes language common to all of the apparatus claims purportedly infringed and turns next to an

---

[7] *See also Jansen v. Rexall Sundown, Inc.*, 342 F.3d 1329, 1334 (Fed. Cir. 2003) ("The applicant[,] having limited his claim by amendment and accepted a patent, brings himself within the rules that if the claim to a combination be restricted to specified elements, all must be regarded as material, and that limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as disclaimers." (quoting *Smith v. Magic City Kennel Club, Inc.*, 282 U.S. 784, 790 (1931)).

analysis of whether CGP's product infringes the apparatus claims. The court need only construe disputed claim language "to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999); *see also Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("If the district court considers one issue to be dispositive, the court may cut to the heart of the matter and need not exhaustively discuss all the other issues presented by the parties."). A *Markman* hearing in this action is unnecessary, because the critical disputed terms are not ambiguous or particularly technical. *See Revlon Consumer Prod. Corp. v. Estee Lauder Companies, Inc.*, No. 00-CV-5960, 2003 WL 21751833, at *14 (S.D.N.Y. July 30, 2003) ("Nothing . . . mandates the use of a *Markman* hearing in every patent case. Courts retain the discretion to construe the claims on the basis of a paper record alone. In a case such as the present one, where the technology is accessible to the court and the claims are relatively straightforward, a *Markman* hearing is unnecessary." (internal quotation marks and citation omitted)); *see also Brazabra, Corp.*, 128 F. Supp. 3d at 634-35 (finding that construction of the terms of the '766 Patent, including "prongs," "elongated main member," and "essentially

disposed parallel" did not require a *Markman* hearing because the terms were "neither ambiguous nor highly technical").

A. *Claim Construction of Apparatus Claims*

Here, the parties dispute the meaning of the term "essentially disposed parallel." The term is found in independent claims 1, 6, and 8, upon which all other purportedly infringed apparatus claims depend. Each of the independent apparatus claims describe a "bra strap retainer comprising[] a retaining member having an elongate main portion and opposite end portions" that contain prongs adapted to retain a bra strap. '766 Patent col.5 ll.2-4, 33-35, 61-63. Common language in claims 1, 6, and 8 provides that "each of [the] prongs ha[s] an outer portion which is *essentially disposed parallel* to [the] elongate main portion." '766 Patent col.5 ll.15-17, 46-48, col.6 ll.9-11 (emphasis added). The complete language of claims 1, 6, and 8 is provided in the margin.[8] CGP argues that the term "essentially disposed parallel"

---

[8] The complete language of claim 1 provides: "1. A bra strap retainer comprising: a retaining member having an elongate main portion and opposite end portions positioned at opposite ends of said main portion; wherein each of said end portions includes a pair of prongs, each prong of a said pair of prongs extending outwardly from opposite sides of said main portion in substantially opposite directions, said prongs being spaced from said elongate main portion to define a slot therebetween; wherein one said prong of a first said pair of prongs extends inwardly toward another one said prong of a second said pair of prongs; wherein said main portion and said prongs of said end portions are all disposed in the same plane; wherein each of said prongs has an outer portion which is essentially disposed parallel to said elongate main portion, said prongs and said elongate main portion being adapted to retain the straps of the bra

13

must be construed in this action — as it was construed in *Brazabra Corp.*, 128 F. Supp. 3d at 640-41 (which will be discussed in further detail below) — to mean "something close to being parallel, but with some deviation." (CGP Mem. at 16.) Mich & Mich responds

---

therebetween with the straps being wound through said slots between said prongs and said elongate main portion."

The complete language of claim 6 provides: "6. A bra strap retainer comprising: a retaining member having an elongate main portion and opposite end portions which are adapted to keep straps of a bra on a user's back in proximate relationship to one another, each of said end portions including prongs extending outwardly therefrom and being spaced from said elongate main portion thus defining a slot therebetween, said prongs being essentially disposed in a plane with said elongate main portion, said prongs of each of said end portions extending outwardly from opposite sides of said elongate main portion, each of said prongs of a respective said end portion being curved and directed toward one of said prongs of the other said end portion, each of said prongs having an outer portion which is essentially disposed parallel to said elongate main portion, said prongs and said elongate main portion being adapted to retain the straps of the bra therebetween with the straps being wound through said slots between said prongs and said elongate main portion, one of said end portions being essentially C-shaped, and the other of said end portions being essentially an inverted C-shape."

The complete language of claim 8 provides: "8. In combination: a bra with a pair of shoulder straps each having a rear section; and a bra strap retainer comprising: a retaining member having an elongate main portion and opposite end portions which are adapted to keep straps of a bra on a user' s back in proximate relationship to one another, said retaining member engaging the body of the straps without holes, eyelets, or loops being part of the straps, each of said end portions including prongs extending outwardly therefrom and being spaced from said elongate main portion thus defining a slot therebetween, said prongs being essentially disposed in a plane with said elongate main portion, said prongs of each of said end portions extending outwardly from opposite sides of said elongate main portion, each of said prongs of a respective said end portion being curved and directed toward one of said prongs of the other said end portion, each of said prongs having an outer portion which is essentially disposed parallel to said elongate main portion, one of said end portions being essentially C-shaped, and the other of said end portions being essentially an inverted C-shape; wherein each of said shoulder straps extends inward of said prongs of one of said opposite end portions with respect to the body of a wearer of said bra such that each of said end portions engages one of said shoulder straps; and wherein each of said shoulder straps extends outward of said elongate main portion with respect to the body of the wearer of the bra such that said straps being wound through said slots between said prongs and said elongate main portion."

that CGP's construction "would exclude the embodiment of FIG. 4 of the '766 patent from being covered by dependent claims 2, 7, and 10." (Mich & Mich Opp'n at 27.) Figure 4 of the '766 Patent is reproduced below:



FIG. 4

CGP, in reply, contends that the prosecution history establishes that Mich & Mich — in order to overcome prior art — "gave up patent protection for an H-shaped clip having prongs with outer portions that are not 'essentially disposed parallel' to an elongate member. . . . Fig. 4 is drawn to a disallowed claim. . . ." (CGP Reply at 4-5.)

The claim language disputed in this action has already been the subject of a claim construction determination. In *Mich & Mich Inc. v. Brazabra*, Mich & Mich brought a claim of infringement of the '766 Patent against a different defendant who manufactured

a different product. In *Brazabra*, the court construed, *inter alia*, the term central to this action: "essentially disposed parallel." 128 F. Supp. 3d at 640-41. "[G]iving the ordinary meaning to 'essentially disposed parallel,'" the *Brazabra* court held, "suggests that the prongs, although they need not be fully parallel, must fundamentally and basically tend toward or incline toward parallel, at least more so than not." *Id.* at 641 ("Accordingly, the court constructs the phrase 'essentially disposed parallel' to mean something close to being parallel, but with some deviation.").

The *Brazabra* court confirmed its construction by evaluating the prosecution history. The U.S. Patent and Trademark Office (the "PTO") had found that U.S. Patent No. 1,401,227 (CGP Ex. 2 (the "Wyeth Patent")) anticipated claims in the '929 Application, the prosecution of which ultimately led to the approval of the same apparatus claims present in the '766 Patent. (*See* CGP Ex. 5, Office Action Summary, pp. 2-3.) The PTO explained that the Wyeth Patent disclosed an "elongate main portion 4 and opposite end portions at opposite ends thereof with each end portion including a pair of prongs." (*Id.* at p. 2.) Figure 3 of the Wyeth Patent, referenced in the PTO's Office Action Summary (*id.* at p. 3), is reproduced below:



*Fig.3.*

The PTO's rejection letter further provided: "None of the cited references, alone or in combination, disclose the bra retainer with the prongs having the outer portion that is *essentially disposed parallel* to the elongate main portion." (*Id.* at p. 3 (emphasis added).)

The patent claimant subsequently added the following language to independent claim 1: "wherein each of said prongs has an outer portion which is *essentially disposed parallel* to said elongate main portion, said prongs and said elongate main portion being adapted to retain the straps of the bra therebetween with the straps being wound through said slots between said prongs and said elongate main portion." (CGP Ex. 5, Reply to Office Action, p. 3 (emphasis added).) The single-sentence alteration addressed the PTO's concerns, and the patent was subsequently approved. As this court explained in the *Brazabra* action, the "the prosecution history suggests that the specification requires prongs with an outer portion that is *at least more parallel than the prongs depicted in the Wyeth patent*." *Brazabra Corp.*, 128 F. Supp. 3d at 641 (emphasis added).

Even if the construction of "essentially disposed parallel" in the *Brazabra* action is not entitled to collateral estoppel effect,[9] the construction of the claim language in the *Brazabra* action was sound. As an initial matter, the court concludes that the two prongs need not be completely "parallel" to the elongate main portion. In order to give meaning to the modifier "essentially disposed," the term "parallel" cannot be so strictly defined. *See Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (declining to embrace a claim construction that would render a claim limitation meaningless). The principal issue is how to give meaning to the term "essentially." Employing the ordinary meaning of the term, the court finds that "essentially" modifies "disposed parallel" by providing a minor qualification to perfect parallelism. Rather than being completely parallel, the "outer portion" of the two prongs must fundamentally tend toward being parallel to the elongate main portion.

As the *Brazabra* court also recognized, the above construction of "essentially disposed parallel" finds significant support in the prosecution history. As explained above, the initial

---

[9] In light of the court's independent construction of the term "essentially disposed parallel," the court need not resolve the parties' dispute regarding the collateral estoppel impact of the construction of the same term in the *Brazabra* action. (*Compare* CGP Reply at 3-4, *with* Mich & Mich Opp'n at 23-25.)

claim 1, which did not include the "essentially disposed parallel" language, was rejected by the PTO as anticipated by the Wyeth Patent. (CGP Ex. 5, Office Action Summary, pp. 2-3.) By contrast, current claims 6, 7, 8, 9, 10, and 11 — which were determined to be allowable by the PTO (*id.* at p. 3) — were each limited by the "essentially disposed parallel" language. Although the PTO determined that current claims 1, 2, 3, 4, and 5 were anticipated by the Wyeth Patent, the PTO explained that "[n]one of the cited references, alone or in combination, disclose the bra retainer with the prongs having the outer portion that is *essentially disposed parallel* to the elongate main portion." (*Id.* (emphasis added).)

When Mich & Mich subsequently added the "essentially disposed parallel" limitation to claim 1, claim 1 was allowed along with current claims 2, 3, 4, and 5, which were dependent on claim 1. Adding the "essentially disposed parallel" language was critical to resolving the PTO's concerns about anticipation by the Wyeth Patent, which already contained — in certain embodiments — prongs fastened to opposite sides of an elastic material and facing each other. *See* Wyeth Patent figs.1-4. Significantly, Mich & Mich does not even attempt to address the patent prosecution history in its briefing. Nowhere in its memorandum does Mich & Mich suggest

that the prosecution history leads to a conclusion different from the one reached by the *Brazabra* court and this court regarding the construction of "essentially disposed parallel."

Further, Mich & Mich does not seriously propose an alternative construction of "essentially disposed parallel." Mich & Mich simply posits that whatever "essentially disposed parallel" means, it must embrace the embodiment in Figure 4 of the '766 Patent (reproduced *supra*). Mich & Mich first notes that Figure 4 of the '766 Patent is described in the specification, which provides:

> In a variation of the aforedescribed embodiments, a bra strap retainer 30 (see FIG. 4) has a configuration similar to the embodiment 10, but significantly includes an elastomeric material that forms at least a section of the main portion 11a of the retainer 30.

'766 Patent col.4 ll.13-16. Mich & Mich argues that because dependent claims 2, 7, and 10 also recite the elastomeric material in the Figure 4 embodiment, any construction of the "essentially disposed parallel" language excluding Figure 4 from coverage must be incorrect.

It is generally not appropriate to interpret claim terms in a manner that excludes a preferred embodiment. *See Rolls-Royce, PLC v. United Techs. Corp.*, 603 F.3d 1325, 1334–35 (Fed. Cir. 2010); *see also Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503

F.3d 1295, 1305 (Fed. Cir. 2007) ("We normally do not interpret claim terms in a way that excludes disclosed examples in the specification."). The Federal Circuit, however, recognizes exceptions to the general rule, which is "not a panacea, requiring all claims to cover all embodiments." *PSN Illinois, LLC v. Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1166 (Fed. Cir. 2008). The court has explained:

> Although we recognize that an interpretation excluding a preferred embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support, where the prosecution history requires a claim construction that excludes some but not all of the preferred embodiments, such a construction is permissible and meets the standard of highly persuasive evidentiary support. This follows from our precedent that the prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.

*Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1327 (Fed. Cir. 2002) (internal quotation marks, citation, and alterations omitted).

Here, the prosecution history targeted the significance of the precise language at issue in this action, "essentially disposed parallel." Mich & Mich disclaimed any construction of "essentially disposed parallel" in which the outer prongs of the patented invention were equally or less parallel to the elongate main portion than the outer prongs of the Wyeth Patent were to its corresponding elastic band. Figure 4 of the '766 Patent is

reproduced below (first image) while Figures 2 and 3 of the Wyeth Patent are reproduced below (second and third images, respectively).



FIG. 4



The outer prongs depicted in Figure 4 of the '766 Patent are less parallel to the elongate main portion than the outer prongs depicted in Figures 2 and 3 of the Wyeth Patent are to its corresponding elastic band. Accordingly, the prosecution history establishes that Mich & Mich disclaimed at least the prong shape

22

depicted in Figure 4 of the '766 Patent. *See Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1215-16 (Fed. Cir. 2008) (adopting construction that excluded all disclosed embodiments because the claims were "susceptible to only one reasonable construction"); *see also TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008) ("[T]o construe the claim term to encompass the alternative embodiment in this case would contradict the language of the claims. Indeed, read in the context of the specification, the claims of the patent need not encompass all disclosed embodiments. Our precedent is replete with examples of subject matter that is included in the specification, but is not claimed." (citation omitted)); *N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1345 (Fed. Cir. 2005) (finding that the prosecution history excluded some, though not all, of the preferred embodiments). Here, only Figure 4 (not Figures 1-3) of the '766 Patent were disclaimed by the prosecution history. Figure 2 of the '766 Patent, which contains prongs "essentially disposed parallel" to the elongate main portion within the meaning of the court's construction, is reproduced below:



FIG. 2

Mich & Mich also argues that the doctrine of claim differentiation, which provides that "each claim in a patent is presumptively different in scope," *RF De., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1263 (Fed. Cir. 2003), dictates a different construction of "essentially disposed parallel." (Mich & Mich Opp'n at 26, 28). "[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1315. Here, Mich & Mich argues that claims 3 and 4 — which depend from claim 1 – would be written out of the '766 Patent under the court's construction of "essentially disposed parallel." Claim 3 provides: "A bra strap retainer as described in claim 1, wherein each of said prongs of a respective said end portion is curved." '766 Patent col.5 ll.26-27. Claim 4

provides: "A bra strap retainer as described in claim 1, wherein one of said end portions is substantially C-shaped, and the other of said end portions is substantially an inverted C-shape." *Id.* col.5 ll.28-30.

The court notes that "[c]laim differentiation is a guide, not a rigid rule." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991) (internal quotation marks and citation omitted); *see also Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005) (recognizing that claim differentiation is "not a hard and fast rule and will be overcome by a contrary construction dictated by the written description *or prosecution history*" (emphasis added)). As noted above, the prosecution history confirms the validity of the construction of "essentially disposed parallel" outlined above.

B.  *Infringement of the Apparatus Claims*

The court turns next to an analysis of whether CGP's product infringes the apparatus claims. "There are two types of infringement: literal infringement, which is not at issue here, and infringement under the doctrine of equivalents." *Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151, 1167 (Fed. Cir. 2012). "Literal infringement requires that each and every claim limitation [within each of the patent's claims] be present in the accused product."

25

*Spiel Assocs.*, 2010 WL 546746, at *7 (citing *Abraxis Bioscience v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1378 (Fed. Cir. 2006)). If even "one [claim] limitation is missing or not met as claimed," there can be no literal infringement. *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998). For ease of reference, Figure 2 of the '766 Patent is reproduced again below (left) alongside the accused product (right):



FIG. 2



Given the above-described construction of "essentially disposed parallel," there is no genuine issue of material fact regarding non-infringement of apparatus claims 1, 3, 4, 5, 6 or 8, all of which contain the "essentially disposed parallel" limitation. No reasonable jury could find that CGP's product infringes the apparatus claims of the '766 Patent. The outer portions of the prongs on CGP's product are not "essentially

26

disposed parallel" to the elongate main portion of the product. The outer portions of the prongs on CGP's product do not fundamentally tend toward being parallel to the elongate main portion of the product. Instead, the outer portions of the prongs of CGP's clip are essentially disposed *perpendicular* to the elongate main portion of the clip.

To avoid the anticipation issue raised by the PTO, Mich & Mich disclaimed any embodiment of the '766 Patent with outer portions of prongs equally or less parallel to an elongate main portion than were the outer portions of the prongs in the embodiment of the Wyeth Patent reproduced again below:



The outer portions of the prongs of CGP's product are plainly less parallel to the elongate main portion of CGP's product than the outer portions of the prongs displayed in Figures 2 and 3 of the Wyeth Patent are to the corresponding band in the Wyeth figures. Accordingly, CGP's product does not infringe apparatus claims 1, 3, 4, 5, 6, or 8, all of which contain the "essentially disposed parallel" limitation. The court's analysis regarding the apparatus claims, however, does not resolve the dispute concerning the method

claims, which do not contain the "essentially disposed parallel" limitation.

### III. *The Method Claims*

CGP also argues that it cannot be liable for inducing infringement of method claims 12, 13, and 14 of the '766 patent. The court first provides the standard for inducing infringement and turns next to CGP's arguments.

#### A. *Legal Standard for Inducing Infringement*

Liability for inducing infringement is provided under 35 U.S.C. § 271(b) ("Section 271(b)"). Section 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To state a claim for induced infringement, a patent holder must establish that an alleged infringer: (1) had knowledge of the patent-in-suit; (2) knew the induced acts were infringing; and (3) specifically intended to encourage another's infringement. *See Commil USA, LLC v. Cisco Sys.*, 135 S. Ct. 1920, 1926 (2015) ("[I]nduced infringement . . . requires knowledge of the patent in suit and knowledge of patent infringement.").

In *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011), the Court held that the knowledge requirement for liability under § 271(b) could be met by a finding of willful blindness. See *id.* at 766–71. Willful blindness has "two basic

requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* at 769 (footnote omitted). In evaluating intent to encourage another's infringement, "direct evidence is not required; rather, circumstantial evidence may suffice." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (internal quotation marks and citation omitted); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir. 1988) ("The requisite intent to induce infringement may be inferred from all of the circumstances.").

CGP correctly recognizes that there is an additional requirement to establish inducing infringement liability. "Inducement liability may arise if, but only if, there is direct infringement" by another party. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014) (internal quotation marks, citation, and alteration omitted). In order for a third party to commit direct infringement of a method patent, the third party must perform all steps of the method patent. *See id.* ("[A] method's steps have not all been performed as claimed by the patent unless they are all attributable to the same defendant, either because the defendant actually performed those steps or because he

directed or controlled others who performed them."); *Move, Inc. v. Real Estate All. Ltd.*, 709 F.3d 1117, 1123 (Fed. Cir. 2013) ("[A]ll the steps of a claimed method must be performed in order to find induced infringement . . . ."). Finally, "although a method claim necessarily recites the steps of the method in a particular order, as a general rule the claim is not limited to performance of the steps in the order recited, unless the claim explicitly or implicitly requires a specific order . . . ." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008).

Here, Mich & Mich argues that CGP induced infringement of independent method claim 12 as well as method claims 13 and 14, which depend from method claim 12. Claims 12 through 14 provide:

> 12. A method of preventing the slippage of bra straps off of the shoulders of a person wearing a bra, comprising: providing a bra strap retainer comprising at least a pair of strap-retaining members positioned at opposite ends of the retainer, respectively, and an elongated member extending between the strap-retaining members; positioning the bra strap retainer in the back region of the person, between the straps of a bra being worn by the person; placing a first bra strap into a retained position by placing the strap in a first pair of slots located between the strap-retaining members and the elongated member; and placing a second bra strap into a retained position by placing the strap in a second pair of slots located between the strap-retaining members and the elongated member; wherein the bra strap retainer brings the first and second straps in close proximity with each other in a location on the person's back, thereby preventing the straps from slipping off the person's shoulder.

30

13. The method of claim 12, wherein the bra strap retainer comprises strap-retaining members positioned at opposite ends of the elongated member.

14. The method of claim 12, wherein each strap-retaining member is curved inward towards the opposite strap-retaining member.

'766 Patent col.6 ll.37-62.

B.    *Infringement of the Method Claims*

CGP contends that it cannot be liable for inducing infringement of method claims 12, 13, or 14 because: (1) CGP does not market its clip as a method of preventing the slippage of bra straps off of the shoulders of an individual wearing a bra; (2) no single entity (neither CGP nor its customers) commits *direct* infringement by performing all of the steps of the method patent; and (3) CGP is entitled to certain equitable rights because it was making, using, and selling its clip before the issuance of the '766 Patent. (CGP Mem. at 5, 17-19; CGP Reply at 5-7.) The court addresses CGP's arguments in turn.

1.    **Purpose of the Method**

First, CGP contends that the purpose of its product is to conceal bra straps (CGP Reply at 6), while the only independent method claim in the '766 patent, claim 12, is targeted toward "preventing the slippage of bra straps off of the shoulders of a person wearing a bra." '766 Patent col.6 ll.37-38. Mich & Mich

responds that "preventing the slippage of bra straps is a necessary result of practicing the method as disclosed in [independent claim] 12." (Mich & Mich Opp'n at 16.) The parties' dispute regarding the purpose of claim 12 is essentially a dispute over the language of claim 12's preamble, which provides: "A method of preventing the slippage of bra straps off of the shoulders of a person wearing a bra." '766 Patent col.6 ll.37-38.

A patent claim typically comprises three parts: (1) the preamble; (2) the transition; and (3) the body. *See* 3-8 Chisum on Patents § 8.06[1][b] (2016). "The preamble is that portion of the claim preceding the word 'comprising.'" *Boehringer Ingelheim Animal Health, Inc. v. Schering-Plough Corp.*, 984 F. Supp. 239, 247 (D.N.J. 1997). Questions frequently arise in patent litigation as to whether preamble language limits a claim. If a preamble "recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim, then the preamble can limit the scope of a claim." *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. 2015) (internal quotation marks and citation omitted). By contrast, "a preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Id.* (internal quotation marks and citation omitted).

"A preamble is not regarded as limiting . . . when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention." *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358–59 (Fed. Cir. 2010) (internal quotation marks and citation omitted).

Here, the preamble of claim 12 is not limiting because it states the purpose or intended use of the invention, and the claim body describes a structurally complete method for bringing two bra straps on an individual's back close together with the use of strap-retaining members positioned at opposite ends of a retainer. The preamble provides that the claimed method prevents slippage of bra straps, which is merely a purpose or intended use for the invention. The method can be understood and practiced without reference to the preamble. *See Tomtom*, 790 F.3d at 1323. The preamble could also be described as specifying a non-limiting "advantage" of the patent. *See Preemption Devices, Inc. v. Minnesota Mining & Manuf. Co.*, 732 F.2d 903, 907 (Fed. Cir. 1984) (recognizing that claim limitations serve to "point out distinctly the process, machine, manufacture or composition of matter which is patented . . . not its advantages"). Accordingly, the preamble

is non-limiting.[10] Because the preamble is non-limiting, the undisputed fact that CGP markets its product toward individuals who want to conceal their bra straps (ECF No. 76, Dunne Decl., at ¶ 8; CGP Reply at 6) is not necessarily conclusive on the issue of whether CGP infringes the method claims.

## 2.    Direct Infringement by CGP's Customers

Second, CGP contends that no single entity performs all of the steps of method claim 12, and therefore there is no direct infringement. (CGP Mem. at 18.) *See Limelight*, 134 S. Ct. at 2117 (recognizing that a "method's steps have not all been performed as claimed by the patent unless they are all attributable to the same defendant, either because the defendant actually performed those steps or because he directed or controlled others who performed them"). CGP's argument hinges on the import of the phrase "providing a bra strap retainer" in claim 12. Although CGP appears to assume that a purchaser of its clip can perform all of the other steps outlined in claim 12, CGP contends that *only CGP* "provid[es]" the bra strap retainer to its customers. (CGP Reply at 5-6.) Mich

---

[10] The same analysis applies to the "thereby preventing the straps from slipping off the person's shoulder" language in the last clause of claim 12. Patent '766 col.6 ll.55-56. *See Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1381 (Fed. Cir. 2003) ("A whereby clause in a method claim is not given weight when it simply expresses the intended result of a process step positively recited." (citation omitted)); *Endo Pharm. Inc. v. Watson Labs., Inc.*, No. 13-CV-192, 2014 WL 2859349, at *7 (E.D. Tex. June 23, 2014) (applying *Minton* to a "thereby" clause).

& Mich contends, by contrast, that any "person who acquires the accused product . . . has provided herself with the bra-strap retainer of Claim 12." (Mich & Mich Opp'n at 18-19.)

Neither party discusses a recent Federal Circuit decision addressing a fundamentally identical dispute regarding the verb "providing" in the context of a method patent. *See Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1365 (Fed. Cir. 2012). In *Meyer*, the Federal Circuit addressed an infringement defendant's argument that "it could not be a direct infringer because it only practices the first step of the claim — 'providing a container' — [and] its customers could not be direct infringers because, while they practice each of the other steps, they do not practice the 'providing' step." *Id.* A representative claim disclosed four steps directed to a method for frothing milk: "(1) providing a container with a 2:1 height to diameter ratio; (2) pouring milk into the container; (3) introducing a plunger; and (4) pumping the plunger to aerate the liquid." *Id.* at 1368. The parties focused on the term "providing" and, as noted above, the defendant contended that it could not be liable for inducing infringement because there was no single entity directly infringing: the defendant "provid[ed]" the container, while its customers completed the other steps. *Id.* at 1369. The court found

35

that "nothing in the claim language or the patent specification limits the 'providing' step to a particular party." *Id.* The court therefore construed "the term 'providing' to mean 'furnishing, supplying, making available, or preparing'" and found that either the defendant or the customers could "satisfy the providing step." *Id.*

Here, the dispute over the term "providing" is nearly analogous to the dispute in *Meyer*. First, there is no language in the claims or the specification that definitely resolves the dispute. Mich & Mich merely cites to a dictionary definition of "provide" that includes variations of the form "to provide oneself." (ECF No 76, Dunne Decl., at ¶ 7; *id.*, Ex. F.) CGP cites no intrinsic or extrinsic evidence to supply meaning to the term "providing." For essentially the same reasons discussed in *Meyer*, the court concludes that the term "providing" here would permit CGP's customers to complete the first "providing" step. Just as a buyer of a milk frother could satisfy the "providing step" by taking the frother "from the kitchen cabinet and plac[ing] it on the counter," *Meyer*, 690 F.3d at 1369, the buyer of CGP's clip can provide herself with the clip by removing it from a drawer or her closet, for example, and placing it in between the straps of her bra. Accordingly, direct infringement is not legally precluded on

36

the basis that CGP's customers do not provide themselves with the bra strap retainer.

### 3. Equitable Intervening Rights

Finally, CGP asserts that it is entitled to rely on "the defense of equitable intervening rights to avoid infringing independent claim 12." (CGP Mem. at 18-19.)

"The doctrine of intervening rights first developed as courts recognized that permitting substantive changes to the scope of patent claims through post-issuance procedures left the door open for gross injustice where a third party, having already begun to make, use, or sell a given article, finds its previously lawful activities rendered newly infringing under a modified patent." *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1361 (Fed. Cir. 2012) (en banc) (internal quotation marks, citation, and alteration omitted). "In such situations, the defendant acquired at least a right to continue to use the articles as if it held a license therefor under the reissued patent." *Id.* (internal quotation marks, citation, and alteration omitted).

As relevant here, there are two types of intervening rights defenses, both provided by 35 U.S.C. § 252.[11] The first is

---

[11] 35 U.S.C. § 252 provides: "A reissued patent shall not abridge or affect the right of any person or that person's successors in business who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United

the "absolute intervening rights" defense, which "provides an accused infringer with the absolute right to use or sell a product that was made, used, or purchased before the grant of the reissue patent as long as this activity does not infringe a claim of the reissue patent that was in the original patent." *BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220-21 (Fed. Cir. 1993). The second intervening rights defense, which grants broader rights, is referred to as the "equitable intervening rights" defense. Equitable intervening rights permit "the continued manufacture, use, or sale of additional products covered by the reissue patent when the defendant made, purchased, or used identical products, or made substantial preparations to make, use, or sell identical products, before the reissue date." *Id.* at 1221; *Marine Polymer*, 672 F.3d at 1362 (recognizing that equitable "intervening rights . . . apply as a matter of judicial discretion

---

States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the continued manufacture, use, offer for sale, or sale of the thing made, purchased, offered for sale, used, or imported as specified, or for the manufacture, use, offer for sale, or sale in the United States of which substantial preparation was made before the grant of the reissue, and the court may also provide for the continued practice of any process patented by the reissue that is practiced, or for the practice of which substantial preparation was made, before the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue."

to mitigate liability"). CGP only seeks equitable intervening rights. (CGP Mem. at 18-19.)

The inquiry as to whether equitable intervening rights should apply is highly fact-intensive. Relevant factors for consideration include: "1) whether non-infringing goods can be manufactured from the inventory used to manufacture the infringing product; 2) whether there are 'existing orders' for the products; 3) whether the accused infringer made 'substantial preparation' to manufacture the products before the reexamination or reissue; and 4) whether the accused infringer relied on the original patent scope in making these preparations." *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 659 F.3d 1084, 1095 (Fed. Cir. 2011), *opinion vacated on other grounds*, 672 F.3d 1350 (Fed. Cir. 2012).

Here, the only evidence put forward by CGP in support of its equitable intervening rights defense is a statement by CGP President Hylton Karon that "CGP was making, using and selling its H-shaped clip . . . continuously since at least as early as September 1, 2009." (CGP Ex. 6, at ¶ 4.) Without more factual development, the court is unable to evaluate what, if any, equitable intervening rights CGP might be entitled to. *See Bow Jax, Inc. v. Sims Vibration Lab., Inc.*, No. 09-CV-047, 2011 WL 1304632, at *3 (E.D. Wash. Apr. 6, 2011) ("[T]he Court declines to

make a determination regarding whether Bow Jax should be entitled to any equitable interveners' rights where Bow Jax has presented no evidence other than an undisputed fact that Bow Jax was making and selling accused products in 2003, two years before the reexamination certificate issuance date."); *see also Flexiteek Americas, Inc. v. Tek-Dek, LTD.*, No. 08-CV-60995, 2013 WL 11904725, at *4 (S.D. Fla. Jan. 16, 2013) ("The Court agrees that without more record evidence it cannot find that the Defendants have acquired equitable intervening rights in this case rendering futile the infringement claims in the plaintiffs' proposed Second Amended Complaint."); *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, 792 F. Supp. 2d 904, 919 (W.D. Va. 2011) ("[T]he evidence supplied by GE is insufficient to support its motion for summary judgment of equitable intervening rights.").

Ultimately, the court concludes that questions of fact preclude summary judgment on the issue of whether CGP induces infringement of method claims 12, 13, and 14 of the '766 Patent. Instructions associated with CGP's products provide that users can "[simply] attach the clip to the middle of [their] back straps," and the instructions show a clip placed in the middle of a woman's back. (Mich & Mich 56.1 ¶ 22.) The instructions are reproduced below:

 

(*Id.*)

CGP's instructions align closely with the steps provided in claim 12: providing a bra strap retainer with strap-retaining members at opposite ends of the retainer, positioning a bra strap retainer in the back region between two bra straps, placing one bra strap into a retained position by placing the strap in the first pair of slots, and repeating the process with a second bra strap. Providing instructions that suggest an infringing use can qualify as active inducement. *See Snuba Int'l, Inc. v. Dolphin World, Inc.*, 250 F.3d 761 (Fed. Cir. 2000); *see also Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006) (finding that a plaintiff alleging that a defendant induced infringement could rely on "instruction sheets to prove acts of direct infringement by end-users"). There is a genuine issue of

material fact regarding whether CGP induces infringement of claims 12, 13, and 14. A reasonable jury could find that CGP has induced its users to infringe claims 12, 13, and 14.

## IV.  *Invalidity*

Having concluded that genuine issues of material fact preclude summary judgment on Mich & Mich's infringement counterclaim regarding the method claims, the court must address CGP's argument that the method claims are invalid. CGP argues that the method claims asserted by Mich & Mich are rendered invalid as (1) anticipated and (2) obvious by the Wyeth Patent.[12] (CGP Mem. at 19-22; CGP Reply at 8.)

Patents are presumed valid, with each claim — whether independent or dependent — "presumed valid independently of the validity of other claims." 35 U.S.C. § 282(a). "The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id.* The burden is not insignificant: "an invalidity defense [must] be proved by clear

---

[12] CGP has argued that all asserted claims of the '766 Patent are invalid as anticipated or obvious. CGP's briefing, however, does not provide the claim-by-claim analysis necessary to support its argument and also does not meaningfully distinguish between anticipation and obviousness arguments. *See MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*, 731 F.3d 1258, 1264 (Fed. Cir. 2013) (recognizing that "grounds of invalidity[] must be analyzed on a claim-by-claim basis"); *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1107 (Fed. Cir. 2003) ("[O]bviousness and anticipation are related, but are legally distinct and separate challenges to a patent's validity.").

and convincing evidence." *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011). Further, prior art that was not before the patent examiner can carry more persuasive weight than prior art considered by the examiner. *See Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012) ("[I]t may be harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered."). Because only the infringement contentions regarding the method claims survive, the court only addresses whether the method claims are invalid as anticipated or obvious.[13]

A claim is anticipated where the "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent." 35 U.S.C. § 102(a). A claim is obvious "if the differences between the subject matter

---

[13] In light of the court's determination that CGP does not infringe the apparatus claims, the court does not address CGP's claim regarding invalidity of the apparatus claims. *See Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) ("We have previously held that a district court has discretion to dismiss a counterclaim alleging that a patent is invalid as moot where it finds no infringement."); *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 696 F. Supp. 2d 582, 593 (E.D. Va. 2010) ("[T]he court exercises its discretion and dismisses Geoquip's counterclaim of invalidity as moot, in light of the court's holding of noninfringement."), *aff'd*, 637 F.3d 1324 (Fed. Cir. 2011); *see also Sliptrack Sys., Inc. v. Steeler Metals, Inc.*, No. 04-CV-0462, 2004 WL 2578432, at *1 (N.D. Cal. Nov. 12, 2004) ("The Federal Circuit (and the Court of Claims before it) has also repeatedly held that a trial court may dismiss invalidity claims as moot once it finds there is no infringement." (collecting cases)).

sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).[14]

A.  *Anticipation of the Method Claims*

"Although § 102 refers to 'the invention' generally, the anticipation inquiry proceeds on a claim-by-claim basis." *Finisar*, 523 F.3d at 1334. "To anticipate a claim, a single prior art reference must expressly or inherently disclose each claim limitation." *Id.* "But disclosure of each element is not quite enough — this court has long held that anticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim." *Id.* (internal quotation marks, citation, and alterations omitted).

The parties' briefing only addresses method claim 12, the sole independent method claim. Method claim 12, for ease of reference, is repeated here:

---

[14] 35 U.S.C. §§ 102 and 103 were recently modified by the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011). The former versions of the statutes apply here, however, because each patent addressed in this action has a filing date preceding the enactment of the AIA. *See Indus. Tech. Research Inst. v. Pac. Biosciences of California, Inc.*, 640 F. App'x 871, 877 n.2 (Fed. Cir. 2016) ("The parties do not dispute that ITRI's '630 patent and PacBio's '673 and '178 applications all have effective filing dates before the enactment of the [AIA]. The pre-AIA versions of 35 U.S.C. §§ 102, 103, and 112 therefore apply in this appeal." (citation omitted)).

12. A method of preventing the slippage of bra straps off of the shoulders of a person wearing a bra, comprising: providing a bra strap retainer comprising at least a pair of strap-retaining members positioned at opposite ends of the retainer, respectively, and an elongated member extending between the strap-retaining members; positioning the bra strap retainer in the back region of the person, between the straps of a bra being worn by the person; placing a first bra strap into a retained position by placing the strap in a first pair of slots located between the strap-retaining members and the elongated member; and placing a second bra strap into a retained position by placing the strap in a second pair of slots located between the strap-retaining members and the elongated member; wherein the bra strap retainer brings the first and second straps in close proximity with each other in a location on the person's back, thereby preventing the straps from slipping off the person's shoulder.

'766 Patent col.6 ll.37-56.

CGP argues that Figure 7 of the Wyeth Patent effectively teaches the same steps. The Wyeth Patent provides: "In Fig. 7, a spring fastener 15 is shown made of celluloid, or metal, which is attached to an elastic portion 4d of the retainer. This fastener is shaped to clamp the fabric of the shoulder strap, preventing the retainer slipping longitudinally on the shoulders . . . ." Wyeth Patent, col.2 ll.78-84. Figure 7 of the Wyeth Patent is reproduced below:



Fig. 7.

Mich & Mich responds that the method of claim 12, unlike in Figure 7 of the Wyeth Patent, requires "placing the strap[s] . . . between the strap-retaining members and the elongated member" and also requires "placing a first bra strap into a retained position by placing the strap in a first pair of slots . . . and placing a second bra strap into a retained position by placing the strap in a second pair of slots." (Mich & Mich Opp'n at 8 (quoting '766 Patent col.6 ll.46-52).)

The court concludes that method claim 12 provides a simpler (and dissimilar) method for securing bra straps than the embodiment in Figure 7 of the Wyeth Patent. Claim 12 provides a method for securing the straps between the strap-retaining members and the elongated member. Both the strap-retaining members and the elongated member described in claim 12 must be in contact with the bra strap in order to secure the strap. The elongated member therefore serves two purposes in the method claim: it separates the two strap-retaining members *and* helps to secure the bra strap. Figure 7 of the Wyeth Patent, by contrast, secures each strap

46

between the flat bed of a "spring fastener." The elastic band in Figure 7 of the Wyeth Patent only serves to connect the two spring fasteners, but is not employed directly to secure the bra strap. The elastic band serves an entirely distinct purpose in Figure 7 of the Wyeth Patent than does the elongated member described in claim 12 of the '766 Patent. As discussed earlier, "anticipation requires the presence in a single prior art disclosure of *all elements* of a claimed invention arranged as in the claim." *Finisar*, 523 F.3d at 1334 (emphasis added); *see also Research Found. of State Univ. of New York v. Mylan Pharm. Inc.*, 531 F. App'x 1008, 1010 (Fed. Cir. 2013) ("A determination that a patent claim is invalid as anticipated under 35 U.S.C. § 102 requires that a prior art reference disclose every limitation of the claimed invention, either explicitly or inherently." (internal quotation marks and citation omitted)). CGP has not met its burden to show, by clear and convincing evidence, *see Microsoft*, 564 U.S. at 95, that *every* limitation of method claim 12 of the '766 Patent was anticipated by the Wyeth Patent.

    B.    *Obviousness*

        CGP also argues, though with reference to essentially the exact same evidence and with no more than a few scattered

sentences in its briefing, that method claim 12 is obvious in light of the Wyeth Patent. (CGP Mem. at 21; CGP Reply at 8-9.)

Although obviousness is a question of law, it is answered on factual determinations including: "(1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) secondary evidence of non-obviousness." *Seiko Epson Corp. v. Coretronic Corp.*, No. 06-CV-6946, 2010 WL 4916424, at *4 (N.D. Cal. Nov. 23, 2010) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). "[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *KSR*, 550 U.S. at 418.

CGP's sole contention regarding obviousness of the method claims is that Figure 7 of the Wyeth Patent renders method claim 12 of the '766 Patent obvious. CGP's limited briefing regarding obviousness mirrors the "conclusory statements" that the Supreme Court has determined cannot sustain an obviousness defense. *See id.* CGP does not address the four factors that have underpinned the obviousness inquiry since the Supreme Court's 1966 decision in *Graham*, 383 U.S. at 17-18. The Wyeth Patent, in Figure

48

7, suggests a significantly more complex and burdensome invention than the method patent described in claim 12 of the '766 Patent. Figure 7 depicts an elastic band with two spring fasteners on either end of the band, and a slide "preferably used to hold the spring member to the strap." Wyeth Patent, col.2 ll.78-85, fig.7. Figure 7, in other words, depicts at least five independent items (one band, two spring fasteners, and two springs). By contrast, the method described in claim 12 of the '766 Patent addresses a simpler process. A single elongate member extends between two strap-retaining members. The user merely positions the retainer at the center of her back and places each bra strap between the strap-retaining member and the elongated member. There are no spring members and no bands to be stretched into place. An individual of ordinary skill in the art would not immediately be led from Figure 7 of the Wyeth Patent to method claim 12 of the '766 Patent. CGP has not shown by clear and convincing evidence that common sense or the knowledge of a skilled artisan would "bridge gaps in [the] prior art's explicit teachings." *In re Nouvel*, 493 F. App'x 85, 91-92 (Fed. Cir. 2012).

The fact that Mich & Mich's method claim 12 is simpler than Figure 7 of the Wyeth Patent reinforces the court's determination. "Experience has shown that some of the simplest

advances have been the most nonobvious." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1391 (Fed. Cir. 1988) (internal quotation marks and citation omitted); *see also Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1570 (Fed. Cir. 1996) ("Although Aerosonic points to the simplicity of this adjustment mechanism, simplicity does not establish obviousness; indeed, simplicity may represent a significant and unobvious advance over the complexity of prior devices."). As the specification of the '766 Patent notes, one of the objects of the '766 Patent "is to provide a new bra strap retainer which provides in the apparatuses and methods of the prior art some of the advantages thereof, while simultaneously overcoming some of the disadvantages normally associated therewith," including by providing a "low cost of manufacture with regard to both materials and labor." '766 Patent col.2 ll.50-51, 55-57.

The court cannot say that CGP has met its burden to establish, by clear and convincing evidence, the obviousness of claim 12 of the '766 Patent.

## CONCLUSION

Accordingly, CGP's motion for partial summary judgment is GRANTED in part and DENIED in part. Specifically,

(1) CGP's motion for summary judgment of non-infringement is granted with respect to apparatus claims 1, 3, 4, 5, 6 and 8 of the '766 Patent;

(2) Genuine issues of material fact preclude granting CGP's motion for summary judgment regarding non-infringement of method claims 12, 13, and 14 of the '766 Patent; and

(3) CGP's motion for summary judgment of invalidity of method claims 12, 13, and 14 of the '766 Patent is denied.

The parties are directed to appear before Magistrate Judge Gary Brown to conduct a settlement conference within two weeks of this memorandum and order. Should the settlement conference not produce a settlement, the parties are ordered to submit a joint report within seven days of the settlement conference discussing the parties' readiness for trial.

**SO ORDERED.**

Dated:  September 30, 2016
        Brooklyn, New York

                        _____/s/_____
                        Kiyo A. Matsumoto
                        United States District Judge